1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  STEED MARTIN,                                No.  2:15-cv-01105 WBS GGH

12              Petitioner,

13        v.                                     FINDINGS AND RECOMMENDATIONS

14  WILLIAM MUNIZ, Warden,

15              Respondent.

16

17  *Introduction and Summary*

18        Petitioner, Steed Martin, seeks federal habeas corpus review of his conviction for six

19  counts of a violation of Cal. Penal Code, § 288(a) (lewd acts) and one count of § 288(b) (forcible

20  lewd acts) for which he was sentenced to 18 years imprisonment.  He raises five issues:

21        a.  Prosecutorial Misconduct (Griffin error), i.e., commenting on petitioner's non-testimony

22            at trial;

23        b.  Ineffective assistance of counsel for not asking for a jury admonition regarding Griffin

24            error, and failure to object at all to another aspect of the alleged Griffin error;

25        c.  Insufficient Evidence of force, violence, duress, menace, or fear of injury to constitute a

26            violation of § 288(b)(1);

27        d.  Jury Instruction error—failure to instruct that petitioner, in the commission of a violation

28
                                            1

1    of  section 288(b), had to be found to have known of and exploited the victim's fear;

2        e.   Failure to instruct on the legal definition of menace.

3        For the reasons that follow issue is procedurally barred and non-prejudicial on the merits,

4    and the related issue b is AEDPA unreasonable on the attorney competence issue, but non-

5    prejudicial on its merits; the remainder of the claims should be denied on their merits.

6    *Background Facts*

7        The factual background is taken form the unreported decision of the state Court of

8    Appeal:

9        Defendant Steed Anthony Martin molested a 13–year–old family friend (the
         victim) while she was spending the night at his house with him and his stepson. A
10       jury found defendant guilty of one forcible lewd act and six other lewd acts (one of
         which was a lesser included offense of a charged forcible lewd act).
11                                                    ***
12       In June 2011, the victim was at her mother's house, where they were throwing a
         birthday party for the mother's boyfriend. Attending the party were defendant, his
13       wife, and his 13–year–old stepson.) 1 The victim had known defendant for about
14       six or seven months, going to dinners, movies, and miniature golf with defendant's
         family. She called him uncle and thought of him as a father figure.2 At the party,
15       everyone was drinking alcohol, including the victim, who had two drinks, one
         given to her by her mother and the other by defendant. At one point during the
16       party while the victim was on the phone, defendant licked her arm and put a beer
         bottle label on her. Toward the end of the party and just past midnight when
17       defendant's wife had gone back to defendant's house, defendant asked the victim
18       if she wanted to spend the night at his house. The victim's mother said that was
         fine, so defendant drove the victim and his stepson back to defendant's house. The
19       victim was wearing a T-shirt and pajama pants with an elastic waistband.
20
21       They all went straight to the "dude room," which was the garage that had been
22       converted into a television room. Defendant took out a gun from his pocket and
         put it on the table to the left of the couch. Upon seeing the gun, the victim was
23       "intimidated by it" "[b]ecause it was just scary seeing a gun coming out of
         somebody's pocket." The victim knew that defendant was in the security business
24       and had seen him with guns before, but "there was something about ... being in the
25       room with him ... [a]nd [his] gun being placed in front of [her]."3 The three sat
         down on the couch with the victim in the middle and started watching a movie.
26       While watching the movie, defendant had his stepson get an electric massager and
27       give the victim a massage on her back. Defendant then had his stepson get a

28

2

blanket, which the victim put across her legs. The victim had a pillow on her as well.

 After the victim had the blanket on her lap, defendant started touching her. He put his hand on her knee and scooted his hand toward her thigh. She "thought it was really creepy and [she] was kind of scared." The victim did not say anything, and they all continued watching the movie. With the blanket still over the victim's lap, defendant moved his hand to her vagina and started rubbing her vagina in a circular motion over her pajama bottoms (count one—lewd act). At this point, defendant asked his stepson to get water from the kitchen, and he complied. While his stepson was out of the room, defendant asked the victim "if it was okay." She said "'yes,' " because she "was scared he was gonna get mad." When his stepson came back into the room, defendant still had his hands under the blanket and on the victim's vagina. She was scared and "kind of freaking out inside" because she "didn't think [defendant] would do something like that." Defendant then told his stepson to go out and feed the dogs. With his stepson out of the room, defendant put his hands in the victim's underwear and rubbed her vagina in a circular motion. He removed it when his stepson came back into the room, and the three continued watching the movie. During that time, while the blanket and pillow were on her lap, defendant put his finger inside her vagina (count two—lewd act). It hurt, and she "was really scared, and really freaked out." He did the same thing a second time (count three—lewd act). He also "took [her] hand and put it on his penis." It felt soft "like spaghetti (count four—lewd act of "grabb[ing] the victim's hand and plac[ing] it on his penis, while sitting on the couch, without force or fear or duress").

It was now after 3:00 a.m., and defendant told his stepson and the victim that it was time to go to bed because it was getting late. Everyone stood up and stretched, and defendant "sent [his stepson] to bed and [defendant and the victim] just stood there." Defendant then locked the door. The victim was feeling "[e]xtremely scared, and nervous." He asked the victim to walk over to him and then said, "'let me finish you off.' " The victim walked over to defendant. He rubbed his face on her cheek and he "just grabbed [her] hair and like held [her] arm." He put one hand down the front of her pants, rubbed her vagina, and then put a finger inside (count five—"rubb[ing] victim's vagina, while victim was standing up"). He pulled down her shirt and licked her nipple (count seven—"licked victim's breast, while victim was standing up"). He then unzipped his pants and "t[oo]k [her] hand and put it on his penis." She felt "[a] little freaked out, and grossed out." He "had [her] rub his penis." It felt "[g]ross and hard." Semen came out and landed on the ground (count six—"lewd act by force or fear or duress, (had the victim rub the defendant's penis until he ejaculated)"). Defendant wiped it up with Windex and a paper towel. He

then asked the victim, "'We're happy, right?'" The victim responded, "'Yes'" because she "didn't know what he was going to say or be mad at [her] or—[she] was scared." Defendant said, "'Goodnight, beautiful'" and left the room.

After defendant left the room, the victim texted her best friend the following morning at 4:00 or 5:00 a.m.: she was in the "[d]ude room and he put his hand on my thigh and at first I thought he was doing it because he was, you know, trying to make me feel comfy, and then he [g]radually moved his hand to there and started rubbing on it and I didn't really notice because I was asleep and all of a sudden he put his hand down my pants and started doing it. And mind you, [his stepson] was sitting right next to me and I had a blanket over myself and a pillow so that's.... But like when him and [his stepson] went to bed, sent [his stepson] to bed first, then he stood me up and did it again, and said, oh, let me finish you off, and did it again and made me give him a HJ [hand job]."

At trial, the defense relied on the state of the evidence and argued in closing that defendant was not guilty of any of the charges because the victim's story "just doesn't make any sense."

People v. Martin, 2013 WL 6114981  *1-2 (Cal App. 2013) (footnotes omitted).

*AEDPA Standards*

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States;  or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 42; Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405–06 (2000).  Circuit precedent may not be "used to refine or sharpen a general principle of Supreme

4

Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, ___ U.S. ____, ____, 133 S.Ct. 1446, 1450 (2013) (citing Parker v. Matthews, ___ U.S. ____, ____, 132 S.Ct. 2148, 2155 (2012)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."  Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.' ").  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).[1]

---

[1]  The undersigned also finds that the same deference is paid to the factual determinations of state courts.  Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding."  Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).  It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable.  See Rice v. Collins, 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006).

1    Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

2    must show that the state court's ruling on the claim being presented in federal court was so

3    lacking in justification that there was an error well understood and comprehended in existing law

4    beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

5          The court looks to the last reasoned state court decision as the basis for the state court

6    judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

7    If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

8    previous state court decision, this court may consider both decisions to ascertain the reasoning of

9    the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

10   "[Section] 2254(d) does not require a state court to give reasons before its decision can be

11   deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Rather, "[w]hen

12   a federal claim has been presented to a state court and the state court has denied relief, it may be

13   presumed that the state court adjudicated the claim on the merits in the absence of any indication

14   or state-law procedural principles to the contrary." Id. at 784-85. This presumption may be

15   overcome by a showing "there is reason to think some other explanation for the state court's

16   decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 80 (1991).

17   Similarly, when a state court decision on a petitioner's claims rejects some claims, but does not

18   expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that

19   the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ____, ____, 133

20   S.Ct. 1088, 1091 (2013). When it is clear, however, that a state court has not reached the merits

21   of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and

22   a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860.

23         The state courts need not have cited to federal authority, or even have indicated awareness

24   of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the

25   state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

26   federal habeas court independently reviews the record to determine whether habeas corpus relief

27   is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853

28   (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional

issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." <u>Himes</u>, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." <u>Harrington</u>, 562 U.S. at 98.  A summary denial is presumed to be a denial on the merits of the petitioner's claims.  <u>Stancle v. Clay</u>, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." <u>Harrington</u>, 562 U.S. at 98.  This court "must determine what arguments or theories...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id</u>. at 786.  "Evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, 'the more leeway courts have in reaching outcomes in case-by-case determinations.'" <u>Id</u>.  Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." <u>Id</u>.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.' " <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013) (quoting <u>Harrington</u>, 562 U.S. at 98).

*Discussion*

        A.  <u>Griffin Error</u>

During the course of the prosecutor's rebuttal argument, the prosecutor started out by noting that petitioner did not testify:

> Defendant did not testify at trial. Defense counsel began her closing argument stressing "the presumption of innocence."

In response, the prosecutor argued in rebuttal: "I'll start from the top in our legal instructions, and the fact that a person is innocent until proven guilty. And that is

absolutely correct. We have a great judicial system in our nation, in our country, and we do operate on that premise, you are innocent until proven guilty. That's the case even when you have child molest sexual assault cases, victims, *and when the perpetrator like [defendant] here will not stand up and admit what he did, then you have to put the victim on.*"

Defense counsel objected as follows: "Objection. My client has no obligation to— it's his Constitutional right. Improper argument."

The court ruled as follows: "The objection to that argument is sustained. If you would please proceed."

The prosecutor continued without further objection as follows: "When he denies the allegations, a trial proceeds, and we put the victims on. And the victim has to be traumatized all over again, but that's what we do in our country to protect the rights of innocent people. That's fine, we accept that. But this is not an innocent person now."

People v. Martin at *2-3 (emphasis added)

The Court of Appeal conceded that constitutional error had occurred on account of the emphasized statement, citing Griffin v. California, 380 U.S. 609, 612–613 (1965): "[The Fifth Amendment prohibits a prosecutor from commenting, directly or indirectly, on a defendant's decision not to testify on his own behalf]."  People v. Martin at *3.  There can be no doubt that such is correct.  The prosecutor directly referenced that petitioner "had not stood up and admitted" his crime.  No further discussion of "error" is necessary.

Petitioner contended before the Court of Appeal that an admonition (which his counsel did not ask for) would not have cured the harm from the Griffin error.  The Court of Appeal responded that "whatever prejudice" occurred, it thought an admonition would have cured the harm.  It is a bit difficult to follow this reasoning because the entire thrust of the Court of Appeal reasoning is that the harm from commenting on petitioner's failure to testify did not rise to the level of actionable error.  Surely, an admonition will not cure *every* comment on a petitioner's failure to testify, although the "*whatever* the prejudice" comment in the abstract would seem to enunciate such an absolute rule.  However, the undersigned will not attempt to adjudicate this supposed procedural default as the prosecutorial error did not impose a substantial and injurious consequence on the verdict.

8

The Court of Appeal went on to cite state cases where even an admonition would not have cured the misconduct, but after doing so it held in the Petitioner's case that the prosecutor's conduct was not "egregious misconduct," given that the comments were a "minimal part of a long argument directly refuting the heart of the defense case that the victim made up the entire molestation." Id. While the prosecutor's comments were inexcusable, the undersigned interprets this holding as finding the error harmless. The error, for purposes of this federal petition, must be analyzed pursuant to Brecht v. Abrahamson, 507 U.S. 619 (1993) (error must have produced a substantial an injurious effect on the verdict), and the harmlessness finding being given AEDPA deference. The undersigned repeats his recent discussion of the subject:

> On federal habeas review of state court findings of constitutional error, the harmless error standard of Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1993), applies. The question is whether the error had substantial and injurious effect or influence in determining the jury's verdict, and resulted in "actual prejudice." See Brecht, 507 U.S. at 637; Fry v. Pliler, 551 U.S. 112, 120, 127 S.Ct. 2321 (2007). Because the Brecht standard "obviously subsumes" the more liberal AEDPA/Chapman standard, the Ninth Circuit has held "we need not conduct an analysis under AEDPA of whether the state court's harmlessness determination on direct review...was contrary to or an unreasonable application of clearly established federal law." Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010) (citing Fry, 551 U.S. at 120). See also Ortiz v. Yates, 704 F.3d 1026, 1038 and n. 9 (9th Cir. 2012). Instead, a federal habeas court is to apply the Brecht test without regard for the state court's harmlessness determination. Pulido, 629 F.3d at 1012 (citing Fry, 551 U.S. at 121–22); see also Merolillo v. Yates, 663 F.3d 444, 454–55 (9th Cir. 2011) (applying "the Brecht test without regard for the state court's harmlessness determination.")

> The Supreme Court has since clarified that Brecht incorporates the requirements of § 2254(d) (AEDPA). Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015). Accordingly, if a state court has determined that a trial error was harmless, "a federal court may not award habeas relief under § 2254(d) unless the harmlessness determination itself was unreasonable." Id. (quoting Fry v. Pliler, 551 U.S. 112, 119 (2007)) (emphasis in original). "[R]elief is proper only if the federal court has 'grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict.' " Davis v. Ayala, 135 S. Ct. 2187, 2197–98, (2015) (quoting O'Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992 (1995)). The Brecht test will be applied, but with due consideration of the state court's reasons for concluding the error was harmless beyond a reasonable doubt. Jones v. Harrington, ___ F.3d ____, 2016 WL 3947820, at *9 (July 22, 2016).

1 | <u>McMonagle v. Meyer</u>, 2016 WL 5404447 *11-12 (E.D. Cal. 2016).

2 |     The Court of Appeal felt that the error was harmless because most of the prosecutor's

3 | rebuttal was indeed focused on the defense counsel's argument and the state of the record, and not

4 | on petitioner's silence.  In reviewing the record that finding is accurate.  But in light of the fact

5 | that the *entire* defense was based on the lack of a need for petitioner to testify, the undersigned

6 | finds more convincing the fact that the jury had been strongly instructed, just moments before, of

7 | the absolute right not to testify.  RT 379.  When the defense objection was sustained, it is logical

8 | to believe that the jury connected such to the previous instruction.  There is insufficient reason to

9 | believe that the instruction, fresh in the jury's mind, was ignored because of the prosecutor's

10 | misconduct.  Hence, the undersigned cannot find the harmlessness conclusion of Court of Appeal

11 | was AEDPA unreasonable.

12 |     The second, alleged <u>Griffin</u> error occurred immediately after the first comment:  "When

13 | he denies the allegations, a trial proceeds, and we put the victims on.  And the victim has to be

14 | traumatized all over again, but that's what we do in our country to protect the rights of innocent

15 | people.  That's fine, we accept that.  But this is not an innocent person now."  RT 429.  No

16 | objection ensued.

17 |     The undersigned is hard pressed to find that the above, second quote trespassed on the

18 | right to remain silent.  "Denial of the allegations" is akin to a not-guilty plea.  This same denial

19 | was essentially part of the well accepted jury instructions on the subject.  RT 369-371.  Further,

20 | whether the victim has to testify, and thereby traumatize herself, has nothing to do with whether a

21 | comment was made about petitioner not testifying.  Moreover, commenting in final argument that

22 | petitioner is not innocent after submission of all the evidence is simply an argument that a

23 | prosecutor makes, in one form or another, in *every* case.

24 |     The Court of Appeal found that the lack of an objection doomed the argument, and as

25 | such, the undersigned analyzes the doctrine of procedural default.  If indeed this second statement

26 | was objectionable, and no objection was made, the contemporaneous objection rule would bar

27 | review of the supposed error in federal court.

28 |     The Ninth Circuit has recognized and applied California's contemporaneous objection

1  rule, which provides that a criminal defendant must make a timely objection to the admission of

2  evidence or other objectionable item at trial in order to preserve a claim challenging that

3  evidence/statement on appeal, as grounds for denying a federal habeas corpus claim under the

4  doctrine of procedural default where there was a failure to object at trial.  See, e.g., Fairbanks v.

5  Alaska, 650 F.3d 1243, 1256 (9th Cir. 2011); Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th

6  Cir.2005); Paulino v. Castro, 371 F.3d 1083, 1092–1093 (9th Cir.2004); Melendez v. Pliler, 288

7  F.3d 1120, 1125 (9th Cir.2002) (citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir.1981));

8  Vansickel v. White, 166 F.3d 953, 957 (9th Cir.1999); Bonin v. Calderon, 59 F.3d 815, 842–843

9  (9th Cir.1995). See also MacDonald v. Paramo, 2016 WL 1670524 (E.D. Cal. 2016). Under the

10  contemporaneous objection rule, California courts broadly construe the sufficiency of objections

11  that preserve issues for appellate review, focusing on whether the trial court had a reasonable

12  opportunity to rule on the merits of the objection.  Melendez, 288 F.3d at 1125.

13       Respondent has asserted procedural default in the Answer concerning the failure to object

14  to this second statement; petitioner has failed to controvert it in a traverse.  Assuming there to be

15  an error, it is procedurally barred from review.

16                     **B.  Ineffective Assistance of Counsel-Griffin Error (Claim 2)**

17       Petitioner claims that his counsel was ineffective for not asking for an admonition after

18  objecting to the prosecutor's Griffin error—an admonition which would have (again) warned the

19  jury not to draw any conclusions based on petitioner's not testifying.  He also claims his counsel

20  was ineffective for not objecting to the purported "second" Griffin error.[2]

21       The Court of Appeal, addressing the ineffectiveness issue on direct review, "could

22  conceive" that counsel had a tactical reason for not asking for the admonition, or objecting

23

24  _____

   [2]  The general, well established standards for ineffective assistance of counsel need not be

25  discussed at length here.  First, without overly second guessing counsel's reasons for acting in the
way she did, counsel's actions must have transgressed any reasonable basis for finding counsel

26  satisfactory, and the unreasonableness of counsel's actions must have undermined confidence in
the outcome.  Strickland v. Washington, 466 U.S. 668 (1984).  Of course, a federal court

27  reviewing the state court determination on the issue under AEDPA must find the state court's
reasoning to be beyond what reasonable jurists would find.  This standard is not meant to

28  personally criticize the state court jurists, but to find their conclusion completely unsupportable.

1  further.  That is, given that the previously read instruction regarding a defendant's not testifying,

2  and with the knowledge that the instructions would be given to the jury in written form, counsel

3  did not desire to further emphasize the lack of petitioner's trial testimony.  The Court of Appeal

4  did not address the issue of prejudice.

5       While great deference is given to the state courts in interpreting federal law, such that any

6  actionable error must be AEDPA unreasonable, that deference does have limits, and cannot be

7  utilized here to accept the rationale of the Court of Appeal.  After all, counsel had *in fact* just

8  objected to the comment on petitioner's silence, and stated that his client had a Constitutional

9  right not to testify.  What possibly could be added that would constitute "emphasis prejudice,"

10  assuming there to be any prejudice at all, in asking for a further, and possibly stern, judicial

11  admonition to the jury.  Petitioner needed the jury not to take into account his "failure" to testify

12  into consideration—it was a core strategy of the defense.  Moreover, neither counsel nor the

13  Court of Appeal decried the "emphasis" that the jury instructions would have, both in oral and

14  written form on petitioner's right not to testify.  What possibly could be lost by on-the-spot

15  emphasis to the jury that the right not to testify was indeed a right that they must not take into

16  account.  The tactical speculation by the Court of Appeal cannot be sustained even under the

17  AEDPA standards set forth previously.[3]

18       Because the Court of Appeal did not discuss prejudice, but stopped after its erroneous

19  conclusion of counsel's reasonableness, the prejudice component is reviewed *de novo*.  Stanley,

20  supra.  Here, for the same reasons as discussed above for not finding the lack of an admonition

21  prejudicial, i.e., for not being absolutely required, the undersigned finds insufficient prejudice to

22  conclude that confidence in the outcome should be undermined.  Given the fact that the jury had

23  been instructed just before argument on the right not to testify, given counsel's statement in his

24  objection about the Constitutional right possessed by his client in this regard, and given the

25  presence of the written jury instructions which would follow the jurors into their deliberations, the

26

27  _____

    [3] While tactical decisions of counsel are ordinarily not second guessed, it cannot be that every

28  "conceived" tactical decision is non-actionable.  The point here is whether the "conceived"
    tactical decision was below what we would expect from reasonable counsel.

1  lack of a further judicial admonition, while helpful under any analysis, cannot rise to the level of

2  undermined-confidence-in-the-verdict prejudice.  While the prejudice result here could have been

3  much different in the absence of the actual circumstances related herein, that is a different case.[4]

4      Finally, the undersigned cannot find that the non-objection to the second statement by the

5  prosecutor -- the victim traumatization statement -- was ineffective assistance of counsel on the

6  basis asserted, i.e. as a comment on petitioner's not testifying.  It is simply not.  The prosecutor

7  only referenced the difficulty associated with having the alleged *victim* testify.  Continuing,

8  telling the jury that petitioner was not innocent "now," i.e., in light of the evidence at trial, is

9  matter-of-fact argument.  In addition, the prosecutor actually commented on protecting "innocent

10  people" from wrongful conviction by the necessity of having the young victim relive the asserted

11  sexual crime, i.e. traumatization.  Petitioner could have no way of establishing either below

12  standard actions on the part of his attorney for "failing" to object, nor prejudice which

13  undermines confidence in the verdict from such a statement.

14      C.  Insufficient Evidence of Duress or Instilling Fear

15      Much of the direct appeal focused upon Count 6 (violation of Cal. Penal Code section

16  288(b)), as conviction on this count requires the lewd act to be committed by use of force, duress,

17  menace etc, and is more serious than the section 288(a) lewd acts counts.[5]  Petitioner raised an

18  issue on direct review that the evidence was insufficient for Count 6:

19  
20  Defendant contends there was insufficient evidence of a forcible lewd act to
    support count six. The jury's verdict stated it found defendant had committed "a
    lewd act by force or fear or duress" for count six, which was defendant "ha[ving]
21  the victim rub [his] penis until he ejaculated." Defendant argues there was no
    evidence of any direct threat of force or violence or any implied threat of force,
22  violence, danger, hardship or retribution. Simply put, he argues, "[t]here was no

23  
24  [4]  No one would disagree that without any instructions at all on the right to remain silent, it is only
    logical to assume that the jury would expect a testified-to denial of the victim's testimony by the
25  defendant, and would view silence on the matter with suspicion or adversely.  That is why the
    constitutional right not to testify is instructed about in *every* trial in which the defendant does not
26  testify.
    [5]  Cal. Penal Code section 288(b) provides in pertinent part: (b)(1) Any person who commits an
27  act described in subdivision (a) by use of force, violence, duress, menace, or fear of immediate
    and unlawful bodily injury on the victim or another person, is guilty of a felony and shall be
28  punished by imprisonment in the state prison for 5, 8, or 10 years.

direct or implied threat whatsoever." As we explain, we disagree because even the law and facts defendant cites illustrate the sufficient evidence here.

We focus on the law of duress and the facts related to it, as that is where defendant directs the majority of his discussion. As defendant notes, duress as used in the statute here means " 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' " (*People v. Leal* (2004) 33 Cal.4th 999, 1004, quoting *People v. Pitmon* (1985) 170 Cal.App.3d 38, 50.) "'[D]uress involves psychological coercion'" and "'can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes.'" (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1319–1320.) "'Other relevant factors include threats to harm the victim' " and " 'physically controlling the victim.'" (*People v. Veale* (2008) 160 Cal.App.4th 40, 46.) But psychological coercion without more does not establish duress. At a minimum there must be an implied threat of force, violence, danger, hardship or retribution. (*Espinoza*, at p. 1321.) Finally, duress is "objective in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246.)

Here, the facts were sufficient to find count six occurred under duress. Defendant was a large man (six feet tall and 238 pounds) who was a father figure to the 13–year–old victim and was 28 years older than she. He took her to his home after midnight and upon entering the "dude room,"  he immediately took his gun out and placed it on the table adjacent to the victim in her plain view. Regardless of how long the gun remained there, defendant's act of displaying his gun in front of the victim ensured she knew he had access to a gun. Right before having the victim masturbate him, he sent his stepson to bed and locked the door to the "dude room". While defendant argues this did not prevent the victim from leaving the room, it did prevent anybody else from coming to the victim's rescue, now that the acts defendant was about to perpetrate on the victim were not being concealed by the blanket. From this environment defendant had created—one in which defendant occupied a position of trust over her, one in which he was physically dominant over her, one in which she knew he had access to a gun, and one in which he isolated her from anybody else who could possibly come to her aid when it was late at night—a jury could reasonably find that defendant psychologically coerced her into masturbating him with the implied threat of physical violence.

People v. Martin at * 4.

Moreover, as set forth by respondent on page 17 of the Answer, the jury was instructed:

The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself.
Duress means a direct or implied threat of force, violence, danger, hardship, or retribution that causes a reasonable person to do or submit to something that he or she would not otherwise do or submit to. When deciding whether the act was

14

1
2

accomplished by duress, consider all the circumstances, including the age of the
child and her relationship to the defendant.
An act is accomplished by fear if the child is actually and reasonably afraid.

3
4

(CT 153-154; RT 383.)

5

    When a challenge is brought alleging insufficient evidence, federal habeas corpus relief is

6

available only if it is found that upon the record evidence adduced at trial, viewed in the light

7

most favorable to the prosecution, no rational trier of fact could have found "the essential

8

elements of the crime" proven beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,

9

319 (1979).  Jackson established a two-step inquiry for considering a challenge to a conviction

10

based on sufficiency of the evidence.  U.S. v. Nevils, 598 F.3d 1158, 1164 (9th Cir.2010) (en

11

banc).  First, the court considers the evidence at trial in the light most favorable to the

12

prosecution.  Id., citing Jackson, 443 U.S. at 319.  "'[W]hen faced with a record of historical facts

13

that supports conflicting inferences,' a reviewing court 'must presume-even if it does not

14

affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the

15

prosecution, and must defer to that resolution.'"  Id., quoting Jackson, 443 U.S. at 326.

16

    "Second, after viewing the evidence in the light most favorable to the prosecution, a

17

reviewing court must determine whether this evidence, so viewed is adequate to allow 'any

18

rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'"  Id.,

19

quoting Jackson, 443 U.S. at 319.  "At this second step, we must reverse the verdict if the

20

evidence of innocence, or lack of evidence of guilt, is such that all rational fact finders would

21

have to conclude that the evidence of guilt fails to establish every element of the crime beyond a

22

reasonable doubt."  Id.

23

    Put another way, "a reviewing court may set aside the jury's verdict on the ground of

24

insufficient evidence only if no rational trier of fact could have agreed with the jury."  Cavazos v.

25

Smith, ___ U.S. ___, 132 S.Ct. 2, 4 (2011).  Sufficiency of the evidence claims in federal habeas

26

proceedings must be measured with reference to substantive elements of the criminal offense as

27

defined by state law.  Jackson, 443 U.S. at 324 n.16.

28

    In conducting federal habeas review of a claim of insufficient evidence, "all evidence

1   must be considered in the light most favorable to the prosecution." <u>Ngo v. Giurbino</u>, 651 F.3d

2   1112, 1115 (9th Cir. 2011). "Jackson leaves juries broad discretion in deciding what inferences

3   to draw from the evidence presented at trial," and it requires only that they draw "'reasonable

4   inferences from basic facts to ultimate facts.'" <u>Coleman v. Johnson,</u>___ U.S. ___, 132 S.Ct.

5   2060, 2064 (2012) ( per curiam ) (citation omitted). "'Circumstantial evidence and inferences

6   drawn from it may be sufficient to sustain a conviction.'" <u>Walters v. Maass</u>, 45 F.3d 1355, 1358

7   (9th Cir.1995) (citation omitted).

8          Superimposed on these already stringent insufficiency standards is the AEDPA

9   requirement that even if a federal court were to initially find on its own that no reasonable jury

10   should have arrived at its conclusion, the federal court must also determine that the state appellate

11   court not have affirmed the verdict under the Jackson standard in the absence of an unreasonable

12   determination. <u>Juan H. v. Allen</u>, 408 F.3d 1262 (9th Cir. 2005). Because this case is governed by

13   AEDPA, this court owes a "double dose of deference" to the decision of the state court. <u>Long v.</u>

14   <u>Johnson</u>, 736 F.3d 891, 896 (9th Cir. 2013) (quoting <u>Boyer v. Belleque</u>, 659 F.3d 957, 960 (9th

15   Cir. 2011).

16          For all the reasons set forth by the Court of Appeal, especially facts about showing the

17   gun in the presence of the victim, there is not much doubt that sufficient evidence existed to

18   demonstrate under California law that the sexual misconduct was occasioned with duress.

19   Causing duress when a gun is shown to the young victim, however long exhibited, will be nearly

20   a given when sex crimes with minors are involved. Certainly, the Court of Appeal was AEDPA

21   reasonable. This claim should be denied.[6]

22                  D.  <u>The Jury Instructions Given Did Not Require That the Perpetrator Knew Of</u>

23                      <u>and Exploited the Victim's Fear to Accomplish the Offense</u>

24          Petitioner makes the very difficult claim that an instruction's ambiguity violated the

25   Constitution.

26   _____

27   [6] No further discussion need be held on the other theories' evidence sufficiency as the jury will
     have presumed to have found on the sufficient theory. <u>Griffin v. United States</u>, 502 U.S. 46

28   (1991)

Our habeas precedent places an "especially heavy" burden on a defendant who, like Sarausad, seeks to show constitutional error from a jury instruction that quotes a state statute. *Henderson v. Kibbe*, 431 U.S. 145, 155, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). Even if there is some "ambiguity, inconsistency, or deficiency" in the instruction, such an error does not necessarily constitute a due process violation. *Middleton, supra*, at 437, 124 S.Ct. 1830. Rather, the defendant must show both that the instruction was ambiguous and that there was " 'a reasonable likelihood' " that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt. *Estelle, supra*, at 72, 112 S.Ct. 475 (quoting *Boyde v. California*, 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). In making this determination, the jury instruction " 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle, supra*, at 72, 112 S.Ct. 475 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, *Weeks v. Angelone*, 528 U.S. 225, 236, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000), the pertinent question "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' " *Estelle, supra*, at 72, 112 S.Ct. 475 (quoting *Cupp, supra*, at 147, 94 S.Ct. 396).

Washington v. Sarausad, 555 U.S. 179, 190-191 (2009).

Petitioner asserts that the jury instruction given with respect to use of force, fear, etc., and relevant to Count 6, the only count on which petitioner was found to have used force etc. was ambiguous to the extent that the prosecution did not have to prove that *petitioner* knew of the victim's fear, and that petitioner exploited that fear to perform the lewd act for which he was convicted.  Before discussing the opinion of the Court of Appeal, the undersigned gives some further background on the challenged instruction.

Count six charged that "the defendant committed a lewd or lascivious act, have (sic) the victim rub the defendant's penis until he ejaculated again, buy use of force or fear."  RAT (augmented transcript) at 34.  The jury instruction given on Count 6 employed the general heading "[committed the act] by force or fear," and defined that term as "[using] force, violence, duress, menace or fear of immediate and unlawful bodily injury to the child…"  RT 382.  As previously set forth, the instruction further defined only "force," "duress," and "fear."  RT 383:

17

The force used must substantially be different from or substantially greater than the force needed to accomplish the act itself.

"Duress" means a direct or implied threat of force, violence, danger, hardship or retribution that causes a reasonable person to do or submit to something that he or she would not otherwise do or submit to."

An act is accomplished by fear if the child is actually and reasonably afraid."

RT 383

The given instruction did not include the standard alternative to "objective fear," i.e. "[or (he/she) is actually but unreasonably afraid and the defendant knows of (his/her) fear and takes advantage of it].]"  See Cal. Crim. 1111.[7]

---

[7]  The entirety of Cal. Crim. 1111, with all of its possible inclusions and situations is as follows (emphasis added):

The defendant is charged [in Count ] with a lewd or lascivious act by force or fear on a child under the age of 14 years [in violation of Penal Code section 288(b)(1)].
To prove that the defendant is guilty of this crime, the People must prove that:
        <Alternative 1A—defendant touched child>
[1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing;]
[OR]
        <Alternative 1B—child touched defendant>
[1B. The defendant willfully caused a child to touch (his/her) own body, the defendant's body, or the body of someone else, either on the bare skin or through the clothing;]
2. In committing the act, the defendant used force, violence, duress, menace, or fear of immediate and unlawful bodily injury to the child or someone else;
3. The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of (himself/herself) or the child;
        AND
4.  The child was under the age of 14 years at the time of the act.
        Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.
        [Actually arousing, appealing to, or gratifying the lust, passions, or sexual desires of the perpetrator or the child is not required.]
        The force used must be substantially different from or substantially greater than the force needed to accomplish the act itself.
        [Duress means the use of a direct or implied threat of force, violence, danger, hardship, or retribution sufficient to cause a reasonable person to do [or submit to] something that he or she would not otherwise do [or submit to]. When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the child and (his/her) relationship to the defendant.]
        [Retribution is a form of payback or revenge.]
        [Menace means a threat, statement, or act showing an intent to injure someone.]
*[An act is accomplished by fear if the child is actually and reasonably afraid [or (he/she)*

18

1      The jury determined, by use of the verdict form, that petitioner was liable on Count 6 on

2   account of "force," or "fear", or "duress," but not the other statutory possibilities of "violence," or

3   "menace."  RT 449.

4      Petitioner makes only half, or a third, of the argument with respect to an ambiguous

5   instruction.  That is, petitioner attacks only that part of Cal. Crim. 1111 which defines "fear," and

6   its lack of an explicit requirement that defendant knew of the fear.  See Petition at 11, 29-35.

7   However, the argument in no way touches the other possibilities—duress and force.  There is, of

8   course, no way in determining whether the jury was unanimous on all three presented

9   possibilities, and the sufficiency of the evidence with respect to duress has been established.

10   Although a jury will be presumed to have found a verdict on sufficient evidence for one theory,

11   even if the other theories are evidence insufficient, Griffin v. United States, 502 U.S. 46 (1991),

12   supra, at fn 5, a theory presented to the jury which is legal error, among valid theories, will not

13   warrant such a presumption.  See Yates v. United States, 354 U.S. 298 (1957) cited and discussed

14   within Griffin.  Thus, if the instruction on fear would allow the jury to convict on an illegal theory

15   -- here the alleged absence of the requirement that petitioner knew of or used the victim's fear to

16   commit the crime -- it does not matter that correct instructions were given as to the other theories.

17      The Court of Appeal found:

18

19      The fundamental problem with defendant's argument is there was no ambiguity in
        the instruction. CALCRIM No. 1111 as given here stated the People must prove

20      "defendant used ... fear of immediate and unlawful bodily injury to the child or
        someone else." For defendant to use the victim's fear as required by the statute, it

21      is implied that he had to know about it. Thus, a common sense reading of the
        instruction necessarily implies defendant's knowledge of the victim's fear. This

22      common sense reading is confirmed in another case that interpreted CALCRIM
        No. 1111, People v. Veale (2008) 160 Cal.App.4th 40. In Veale, the court

23      explained as follows: "CALCRIM No. 1111 states, as to a violation of section 288,
        subdivision (b) based on the use of fear, that the jury must find that the defendant

24      used the victim's fear of immediate harm as a means of molesting the victim."

25   _____

26   is actually but unreasonably afraid and the defendant knows of (his/her) fear and takes
     advantage of it].]

27      [It is not a defense that the child may have consented to the act.]

28   [Under the law, a person becomes one year older as soon as the first minute of his or her birthday
     has begun.]

(*Veale*, at p. 51, italics added.) Although the issue in *Veale* was different than here, its description of the jury instruction contains the same common sense reading that we give it, i.e., knowledge is implicit in the instruction because a defendant could not use the victim's fear as a means of molesting her if he did not know about it. For this reason, the instruction did not have to explicitly require the jury to find the perpetrator knew of the victim's fear, as defendant contends.

People v. Martin at * 5 (footnote omitted)

The entire instruction, Cal. Crim 1111, is poorly written.  When one reviews the entire instruction, it would appear that the requirement of the defendant's knowledge of fear is only required for fear that it is subjectively held, but *unreasonable*.  See supra.  The logical inference is that if a requirement is expressly set forth for a victim's unreasonable fear being known by the defendant, but not set forth for reasonable fear, the requirement does not exist for a victim's reasonable fear—that's plain English.  If the entire section on defining "fear" had been given to the jury, the instruction might well be hopelessly ambiguous.

However, the jury was not instructed with the dichotomy of reasonable fear versus unreasonable fear.  It was only instructed on reasonable fear.  Thus, assuming as did the Court of Appeal, that under California law petitioner did have to know of the victim's fear to "use" it, even where the fear was "reasonable fear," the Court of Appeals' determination of lack of ambiguity based on the *implicit* requirement of petitioner's knowledge of the victim's fear, while arguably incorrect, is not so deficient as to be termed a ruling that would direct a finding by reasonable jurists that the instruction was ambiguous.  That is, the Court of Appeal's determination is not AEDPA unreasonable.

Finally, the jury was instructed that defendant had to "use" the fear he implicitly knew of. No more is required for the "exploitation" part of California law.

### E.  Failure to Instruct on the Legal Definition of Menace

As found by the Court of Appeal, if menace was not presented to the jury as a possible theory, and it was not, there could be no requirement to instruct on it.  This common sense ruling cannot be AEDPA unreasonable.

////

////

*Conclusion*

The petition for writ of habeas corpus should be denied.

No Certificate of Appealability should issue.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 8, 2016

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE